UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-61261-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

TIMOTHY JOHNSON,

     Petitioner,

v.

                             **REPORT OF**
                     **MAGISTRATE JUDGE**

JULIE L. JONES,

     Respondent.

_____/

## I.  Introduction

On June 15, 2015, Timothy Johnson, a state prisoner currently confined at Jackson Correctional Institution, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner challenges the constitutionality of his convictions and sentences for eight (8) counts of robbery with a firearm, entered following a jury verdict in the Seventeenth Judicial Circuit Court in and for Broward County, Florida, in case no. 09-17837CF10B.

This Cause was referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts. In issuing this report, the Undersigned has carefully reviewed and considered the instant petition (DE#1), the Respondent's response to this Court's Order to Show Cause Dated 19 June 2015 (DE#12) along with its supporting appendices, containing copies of relevant state court pleadings, the trial

transcripts, and two DVDs containing Petitioner's statement to the police. (DE#12:Apps.1-5); (DE#13).

## II. <u>Claims</u>

Construing the arguments liberally as afforded pro se litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Petitioner raises as grounds for relief the following claims of trial court error, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel:[1]

> Claim 1. The trial court committed reversible error in allowing the state to introduce collateral crime evidence of a 24-hour robbery that occurred before the offenses for which he was convicted in case number 09-17837CF10B, (DE#1:6A);
>
> Claim 2. The trial court erred in denying Petitioner's motion for mistrial when the prosecutor improperly commented on his right to remain silent, (DE#1:6A-6B);
>
> Claim 3. Appellate counsel rendered ineffective assistance by failing to raise and / or argue the denial of a motion to suppress, (DE#1:8A-8B);
>
> Claim 4. Appellate counsel rendered ineffective assistance by failing to raise and / or argue the court's error in allowing a joint trial after motion to sever defendants was granted, (8A,8C-8D);
>
> Claim 5. Appellate counsel rendered ineffective assistance by failing to raise and / or argue preserved error of unfair and disproportionate racial makeup of jury, (DE#1:8A,8E);
>
> Claim 6. Appellate counsel rendered ineffective assistance by failing to raise and / or argue the admission of unauthenticated evidence, (DE#1:8A,8F);
>
> Claim 7. Appellate counsel rendered ineffective assistance by failing to raise and / or argue the denial of the motion to suppress confession, (DE#1:8A, 8G);

---

[1] Petitioner's claims have been renumbered to include his subclaims.

Claim 8. Trial counsel rendered ineffective assistance by failing to argue and / or object to the misapplication of law during suppression hearing, (DE#1:8-9A);

Claim 9. Trial counsel rendered ineffective assistance by failing to argue and / or object to conviction and sentence of uncharged offense of principal, (DE#1:8-9B).

III. <u>Relevant Procedural History and Factual Background</u>

On September 23, 2009, an Information was filed in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, charging the Petitioner and his codefendant, Dietrick Johnson, with eight (8) counts of robbery with a firearm. (DE#12:Ex.1:7-10).

On September 13, 2010, Petitioner filed a motion to suppress cell tower logs. (DE#12:Ex.1:54-57). On October 15, 2009, the State filed a motion in limine for determination of admissibility of collateral crime evidence, seeking to introduce at trial evidence of a robbery and aggravated assault allegedly committed by Petitioner and his codefendant on September 4, 2007 at a CVS Pharmacy in Pompano Beach. (DE#12:Ex.1:17-29).

On October 30, 2009, Petitioner's codefendant filed a motion to exclude <u>Williams</u>[2] rule evidence which was adopted by Petitioner in a motion filed on November 12, 2009. (DE#12:Ex.2:33-37); (DE#12:Ex.1:33-34;43). The codefendant also filed a motion to sever defendants which was granted by the trial court, and a motion to sever offenses which was adopted by Petitioner in an ore tenus motion. (DE#12:Ex.4:38-40); (DE#12:EX.6:7); (DE#12:Ex.3:41-43); (DE#12:Ex.6:7-8); (DE#12:EX.1:43). On November 16, 2009, Petitioner filed a motion

---

[2] <u>Williams v. State</u>, 110 So.2d 654 (Fla. 1959).

to suppress confessions, admissions, and statements. (DE#12:EX.1:35-39). Hearings were held on all motions (DE#12:EX.6; EX.7; EX.8). Thereafter, the trial court denied all of Petitioner's motions. (DE#12:EX.1:44-48,52-53,58-60,62-64).

Petitioner proceeded to trial from November 29, 2010 through December 7, 2010. (DE#12:Ex.9). Petitioner and his codefendant had a joint trial with two different juries to avoid _Bruton_[3] errors. (DE#12:Ex.9:6). At trial, the State presented evidence that two men robbed three 24-hour pharmacies in the early hours of October 8, 2007. Victims of those robberies testified as to how and when the robberies where committed and surveillance videos of the robberies were introduced into evidence and presented to the jury. (DE#12:Ex.9:767-75,780-95,802-25,852-73). The State was allowed to introduce collateral crime evidence of another robbery committed by two men in the early hours of September 4, 2007 at a CVS Pharmacy in Pompano Beach. (DE#12:Ex.9:827-32). The State presented evidence that Petitioner's codefendant lost his hat outside the CVS store while he was fleeing from the scene. (DE#12:Ex.9:966-71). DNA evidence was presented to establish that the hat belonged to the codefendant. (DE#12:Ex.9:571-96,997-1012). MetroPCS records of Petitioner's cell phone and his codefendant's cell phone were introduced into evidence to show that during the time when the September 4 and October 8 robberies were committed, both were in the area and in contact with each other. (DE#12:Ex.9:877-901,930-39). Petitioner's statement to the police in which he admitted

---

[3] _Bruton v. United States_, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 2d 476 (1968).

his involvement in the robberies as a lookout was also introduced into evidence and played for the jury.[4]

The jury found Petitioner guilty as charged on all counts and the trial court sentenced him to eight (8) concurrent terms of life in prison as a habitual felony offender. (DE#12:Ex.1:134-41); (DE#12:Ex.1:157-80).

Petitioner appealed his convictions and sentences to the Fourth District Court of Appeal, in case no. 4D11-236. (DE#12:Ex.1:219). In his initial brief, Petitioner raised the following two (2) issues:

---

[4]
    While reviewing the extensive record in this case, the Undersigned discovered that the transcript of the trial proceedings held on December 3, 2010 was missing from the record. The trial transcript for December 2, 2010 reflects that Petitioner's jury was supposed to return to court at 1:30 p.m. on the following day when the state planned to call Detective Armando Enrique as a witness and play the video of Petitioner's statement to the police. (DE#12:Ex.9:736, 843). The clerk's minutes for that day reflect that Detective Armando Enrique was called as a witness by the State and the State's exhibits 17 through 20, and 24 through 25 were introduced into evidence. (DE#12:Ex.1:143). On July 5, 2016, this Court issued a paperless order requiring the Respondent to immediately file the missing portion of the transcript for the trial proceedings held on December 3, 2010. (DE#16).
    On July 6, 2016, the Responded filed a response stating that at this time it is unable to comply with this Court's order because it could not locate a transcript for the December 3, 2010 trial proceedings.(DE#17:1-2). Respondent has contacted Boss Reporting, the agency that reported the trial, and Boss represented that it does not have a copy of the transcript because it was not ordered as part of the record on appeal. (DE#17:2). Respondent further pointed out that a transcript for that day is not listed in the index to the record on appeal and no motion to supplement the record with that transcript was filed. (DE#17:1-2). However, the designation to the court reporter reflects that counsel for Petitioner requested the agency to transcribe the "entire trial proceedings recorded by the Reporter, T. Peck, on December 1-7, 2010." (DE#12:Ex.1:222). The record before this Court is unclear as to whether the Fourth District Court of Appeal had a copy of the State's trial exhibits #19 and #20, which are two (2) DVDs containing Petitioner's statement to the police. However, the record reflects that the trial court has reviewed Petitioner's statement prior to ruling on Petitioner's motion to suppress confession and that the jury had the opportunity to view Petitioner's videotaped statement during trial and during jury deliberations. (DE#12:Ex.1:45); (DE#12:Ex.9:1157-58, 1188-89, 1264-65, 1296-97).

> Issue I. The trial court committed reversible error in allowing the state to introduce collateral crimes evidence of a prior 24-hour pharmacy robbery;

> Issue II. The trial court erred in denying Petitioner's motion for mistrial when the prosecutor in closing argument improperly commented upon his right to remain silent.

(DE#12:Ex.10). The State of Florida filed an answer brief, (DE#12:Ex.11), and on April, 10, 2013, the Fourth District Court of Appeal affirmed Petitioner's convictions and sentences in a written opinion. Johnson v. State, 112 So.3d 564 (Fla. 4th DCA 2013); (DE#12:Ex.12). The mandate issued on May 10, 2013. Thereafter, Petitioner sought discretionary review in the Supreme Court of Florida, but on October 3, 2013, the court declined to accept jurisdiction. Johnson v. State, 126 So.3d 1057 (Fla. 2013) (table). The United States Supreme Court's on line docket does not reflect that Petitioner filed a petition for writ of certiorari in that court.[5] Petitioner's convictions and sentences became final on January 2, 2014, when the time for seeking certiorari review in the United States Supreme Court expired. 28 U.S.C. § 2244(d)(1)(A).

On May 21, 2014, Petitioner executed a Petition for Writ of Habeas Corpus and provided it to prison officials for mailing to the Fourth District Court of Appeal. (DE#12:EX.15). Petitioner alleged the following five (5) grounds of ineffective assistance of appellate counsel:

> Claim 1. Appellate counsel rendered ineffective assistance by failing to raise or argue the denial of the motion to suppress cell tower logs;

---

[5] The Court takes judicial notice of the United States Supreme Court's on-line docket, located at http://www.supremecourt.gov/docket/docket.aspx, which does not reflect any filings by petitioner during the relevant time period. See Fed.R.Evid. 201.

> Claim 2. Appellate counsel rendered ineffective assistance by failing to raise and / or argue trial court error in allowing a joint trial after motion to sever defendants was granted;
>
> Claim 3. Appellate counsel rendered ineffective assistance by failing to raise and / or argue preserved error of unfair and disproportionate racial makeup of jury;
>
> Claim 4. Appellate counsel rendered ineffective assistance by failing to raise and / or argue trial court error in admitting unauthenticated evidence;
>
> Claim 5. Appellate counsel rendered ineffective assistance by failing to raise and / or argue trial court error in denying the motion to suppress confession.

(DE#12:Ex.15). On July 16, 2014, the Fourth District Court of Appeal denied per curiam the petition for writ of habeas corpus without requesting the State's response. (DE#15: EX.15). Thereafter, Petitioner filed a motion for rehearing, which was denied on August 22, 2014. (DE#12:Ex.15).

On August 11, 2014, Petitioner executed a postconviction motion and handed it to prison officials for mailing to the trial court. Petitioner raised the following grounds for relief:

> Claim 1. Trial counsel rendered ineffective assistance by failing to argue and / or object to the misapplication of law during the suppression hearing;
>
> Claim 2. Trial counsel rendered ineffective assistance by failing to argue and / or object to conviction and sentence of uncharged offense of principal;
>
> Claim 3. Trial counsel rendered ineffective assistance by failing to move for a judgement of acquittal or directed verdict and / or failing to object to erroneous verdict form.

(DE#12:Ex.16:1-25). The State filed a response and the trial court denied Petitioner's motion for postconviction relief based on the reasons set forth in the State's response.

(DE#12:Ex.16:27-69);   (DE#12:Ex.16:70).   Petitioner   moved   for rehearing which was denied by the postconviction court on November 3, 2014. (DE#:12: Ex.16:71-75); (DE#12:Ex.16:76).

Petitioner appealed the denial of his postconviction motion to the Fourth District Court of Appeal, in case no. 4D14-4888, raising the following three (3) issues:

> Issue 1. The postconviction court erred in denying ground one of the rule 3.850 motion without an evidentiary hearing and without attaching portions of the record that conclusively refute the claim;
>
> Issue 2. The postconviction court erred in denying ground two of the rule 3.850 motion without an evidentiary hearing and without attaching portions of the record that conclusively refute the claim;
>
> Issue 3. The postconviction court erred in denying ground three of the rule 3.850 motion without an evidentiary hearing and without attaching portions of the record that conclusively refute the claim.

(DE#12:Ex.16:77); (DE#12:Ex.17). On April 23, 2015, the appellate court affirmed in a per curiam decision. Johnson v. State, 4D14-4888, 2015 WL 1849564 (Fla. 4th DCA Apr. 23, 2015) (table); (DE#12:Ex. 19).  Petitioner moved for rehearing. (DE#12:Ex.20). On June 2, 2015, the appellate court denied rehearing and the mandate issued on June 19, 2015. (DE#12:Ex.21; Ex.22).

On June 9, 2015, Petitioner executed the instant federal petition and provided it to prison authorities for mailing to this Court. (DE#1). On June 19, 2015, this Court issued an Order to Show Cause asking the Respondent to show cause why the petition should not be granted. (DE#5). On August 6, 2015, after being granted an extension of three (3) days, the Respondent filed its Response to Order to Show Cause, (DE#12), along with five (5) supporting appendices, containing copies of relevant state court pleadings and the trial transcripts. (DE#12:Apps.1-

5). On August 26, 2015, the Respondent also filed a notice of mailing a copy of the State's trial exhibits #19 and #20, which are two (2) DVDs containing the Petitioner's statement to the police. (DE#13). On September 9, 2015, Petitioner filed a motion for extension of time requesting an additional ninety (90) days to file a reply to the Respondent's response. (DE#14). This Court granted Petitioner an additional thirty (30) days to file his reply. (DE#15). However, Petitioner failed to file a reply by October 14, 2015.

IV. <u>Governing Legal Principles</u>

A. <u>Standard of Review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")</u>

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). This standard is both mandatory and "difficult to meet." <u>White v. Woodall</u>, 134 S.Ct. 1697, 1702 (2014)(quoting <u>Metrish v. Lancaster</u>, 133 S.Ct. 1781, 1786 (2013)(internal quotation marks omitted)); <u>see also</u> <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013)(explaining that the standard was intended to be difficult to meet).

The United States Supreme Court has held "that §2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008) (A state court's summary rejection of a claim, even without discussion, is an adjudication on the merits and warrants deference).

"Clearly established Federal law" includes only the governing legal principles, not the dicta, set forth in the decisions of the United States Supreme Court at the time of the state court's relevant ruling. Woodall, 134 S.Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

A decision is "contrary to" clearly established Federal law if the state court either: (1) applies a rule that contradicts the governing Supreme Court case law; or (2) reaches a different result from the Supreme Court when applying the governing law to "materially indistinguishable facts." Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010) (quoting Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003)); Mitchell v. Esparza, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court's decision involves an "unreasonable application" of the Supreme Court's precedents if the state court either: (1) applies the precedents to the facts of the case "in an objectively unreasonable manner," Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 1439, 161 L.Ed.2d 334 (2005); or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 407, 120 S.Ct. at 1520). The unreasonable application analysis requires a state court decision to be "objectively unreasonable" not merely incorrect or erroneous. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003) (citation omitted). To obtain habeas relief from a federal court, a petitioner in custody pursuant to a judgment of a state court must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Woodwall</u>, 134 S.Ct. at 1702 (quoting <u>Richter</u>, 562 U.S. at 103, 131 S.Ct. at 786–787).

The Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller—El v. Cockrell</u>, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When reviewing a claim brought pursuant to section 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see</u> <u>Miller—El</u>, 537 U.S. at 340, 123 S.Ct. at 1042 (explaining that a federal court can disagree with a state court's credibility finding "and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). A federal court's

review of a claim brought pursuant to section 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. See <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181-82, 131 S.Ct. 1388, 1398-1400, 179 L.Ed.2d 557 (2011) (holding that new evidence introduced in federal habeas court has no bearing on section 2254(d)(1) review).

As explained by the Supreme Court, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Hardy v. Cross</u>, 132 S.Ct. 490, 491, 181 L.Ed.2d 468 (2011) (quoting <u>Felkner v. Jackson</u>, 562 U.S. 594, 598, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011)). The rationale behind this standard is that "State courts are adequate forums for the vindication of federal rights," <u>Titlow</u>, 134 S.Ct. at 15, and the purpose of AEDPA is to ensure that federal habeas relief guards "against extreme malfunctions in the state criminal justice systems," not to correct errors. <u>Greene v. Fisher</u>, 132 S.Ct. 38, 43 (2011)(internal quotation marks and citations omitted).

B. <u>Ineffective Assistance of Counsel Standard</u>

The standard for a successful claim of ineffective assistance of counsel was established in the two-pronged <u>Strickland</u>[6] test, which requires a defendant to prove both deficient performance and prejudice to be entitled to relief. Performance is "measured against an objective standard of reasonableness under the prevailing professional norms." <u>Rompilla v. Beard</u>, 545 U.S. 374, 381, 125 S.Ct. 2456, 2462, 162 L.Ed. 2d 360 (2005) (internal quotation marks and citations omitted). To

---

[6] <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

prove deficient performance, a petitioner must identify specific acts or omissions by counsel that are so serious "that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The prejudice prong requires a showing that "there is a reasonable probability that but for counsel's unprofessional errors," the outcome of the proceedings would have been different, but because counsel's errors were so serious, the petitioner was deprived "of a fair trial, a trial whose result is reliable." Id. at 688, 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. at 694.

In assessing an attorney's performance, a court must be highly deferential and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Due to the difficulties inherent in evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. This means that a petitioner has to overcome the presumption that the challenged action was sound trial strategy, and bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006); see also, Strickland, 466 U.S. at 689.

Claims of ineffective assistance of appellate counsel are governed by the same standards as those applied to trial counsel, requiring a petitioner to demonstrate both deficient performance and prejudice. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir.

2009)(citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)).

"[N]onmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel." Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005). Furthermore, appellate counsel is not required under the Sixth Amendment to raise every nonfrivolous issue, "[r]ather, an effective attorney will weed out weaker arguments, even though they may have merit." Philmore, 575 F.3d at 1264 (citing Heath, 941 F.2d at 1130-31). To determine whether appellate counsel's failure to raise a claim resulted in prejudice, the court must assess the merits of the omitted claim. Philmore, 575 F.3d at 1264-65 (citing Heath, 941 F.2d at 1132). If the omitted claim would have a reasonable probability of success on appeal, then appellate counsel's performance resulted in prejudice. Philmore, 575 F.3d at 1265 (citing Heath, 941 F.2d at 1132).

It is very difficult to establish that a state court's application of Strickland was unreasonable under section 2254(d). Richter, 562 U.S. at 105, 131 S.Ct. at 788. Both the Strickland and the section 2254(d) standards are "highly deferential" and when applied together, the review must be "doubly" deferential. Richter, 562 U.S. at 105, 131 S.Ct. at 788. Federal courts reviewing claims of ineffective assistance of counsel previously adjudicated in state court, must be mindful of the danger of equating reasonableness under Strickland with reasonableness under section 2254(d). Richter, 562 U.S. at 105, 131 S.Ct. at 788. The review under section 2254(d) requires federal habeas courts to determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard" rather

than "whether counsel's actions were reasonable." <u>Richter</u>, 562 U.S. at 105, 131 S.Ct. at 788.

V.  <u>Discussion</u>

A.  <u>Timeliness of the instant habeas corpus petition</u>

Because this habeas petition was filed after the enactment of the AEDPA, the provisions of that Act govern this action. <u>See, e.g.,</u> <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 246, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007). The AEDPA imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners in federal court.[7] 28 U.S.C. §2244(d)(1)("A 1-year period of limitation shall apply to an application for a writ of habeas corpus ....").

In its response to this Court's order to show cause, the Respondent concedes that this federal petition is timely filed. (DE#12:6-7); see 28 U.S.C. §2244(d)(1)-(2). Less than one year of the federal limitations period ran during which no state court proceedings were pending before petitioner filed this habeas petition. The one-year AEDPA limitations clock began to run on **January 2, 2014,** when the 90-day period for seeking certiorari

---

[7] The statute provides that the limitation period shall run from the latest of

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

review in the United States Supreme Court expired and Petitioner's convictions and sentences became final. See 28 U.S.C. §2244(d)(1)(A).

The limitations period ran for 139 days until **May 21, 2014,** when Petitioner provided his habeas corpus petition to prison officials for mailing to the Fourth District Court of Appeal. That filing automatically stopped the running of the AEDPA limitations period. 28 U.S.C. §2244(d)(2)("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). The appellate court disposed of Petitioner's habeas petition on **August 22, 2014,** when it denied his motion for rehearing and rehearing en banc.

On **August 11, 2014,** Petitioner provided his motion for postconviction relief to prison officials for mailing to the circuit court. That motion was disposed of on **November 12, 2014,** when the postconviction court denied rehearing. Thereafter, Petitioner timely pursued appellate remedies. The appellate proceedings concluded on **June 19, 2015** when the court issued its mandate affirming the denial of postconviction relief. On **June 9, 2015,** Petitioner initiated the habeas proceedings in this Court. Thus, from May 21, 2014 until the filing of the instant habeas petition, the one-year time limitation imposed by the AEDPA was tolled by collateral proceedings in state court. Therefore, the habeas petition is timely filed.

B.  Exhaustion of claims and procedural bar

A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the

state court correctly applies a procedural default principle of
state law; or (2) when the petitioner never raised the claim in
state court, and it is obvious that the unexhausted claim would
now be procedurally barred in state court. Bailey v. Nagle, 172
F.3d 1299, 1302-03 (11th Cir. 1999).

Under the doctrine of procedural default, when "a state
prisoner has defaulted his federal claims in state court pursuant
to an independent and adequate state procedural rule, federal
habeas review of the claims is barred" unless the petitioner can
either show cause for the default and actual prejudice, or show
that "failure to consider the claims will result in a fundamental
miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-
50, 111 S.Ct. 2546, 2564-65, 115 L.Ed.2d 640 (1991) (internal
quotation marks omitted); see also Harmon v. Barton, 894 F.2d
1268, 1270 (11th Cir. 1990)(In cases where a state court
correctly applies a procedural default principle of state law, a
federal court reviewing the state court's decision must abide by
it.).

It is axiomatic that issues raised in a federal habeas
corpus petition must have been fairly presented to the state
courts and thereby exhausted prior to their consideration on the
merits. Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74
L.Ed.2d 3 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11th Cir.
1983). Exhaustion requires that a claim be pursued in the state
courts through the appellate and postconviction process. Leonard
v. Wainwright, 601 F.2d 807 (5th Cir. 1979), Mason v. Allen, 605
F.3d 1114 (11th Cir. 2010), Herring v. Sec'y Dep't of Corr's, 397
F.3d 1338 (11th Cir. 2005). Both the factual substance of a claim
and the federal constitutional issue itself must have been
expressly presented to the state courts to achieve exhaustion for

purposes of federal habeas corpus review. See, e.g., Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed. 2d 64 (2004); Gray v. Netherlands, 518 U.S. 152, 116 S.Ct. 2974, 135 L.Ed. 2d 457 (1996); Duncan v. Henry, 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The United States Supreme Court has repeatedly "emphasized that mere similarity of claims is insufficient to exhaust." Henry, 513 U.S. at 366, 115 S.Ct. at 888; Harless, 459 U.S. at 6, 103 S.Ct. at 277; Connor, 404 U.S. at 276, 92 S.Ct. at 512-13.

In the instant case, the Respondent argues that Petitioner's first claim of trial court error for allowing collateral crime evidence at trial is procedurally defaulted because he did not argue its federal underpinnings to any state court. (DE#12:8-9). Respondent contends that Petitioner has not demonstrated cause for the default or actual prejudice to the extent that failure to consider his claim will result in a fundamental miscarriage of justice and therefore, his claim is procedurally barred in this Court. (DE#12:8-9). Respondent states that Petitioner has exhausted all his other claims in the state courts.

A full review of the record reflects that the postconviction court denied Petitioner's claim of ineffective assistance of counsel[8] for failing to object to the misapplication of law during the hearing on the motion to suppress cell tower records for the reasons set forth in the State's response. (DE#12:Ex.16:70).

The State argued that Petitioner's claim was not cognizable on the merits because he was merely trying to raise an issue that

---

[8] This is claim nine in the instant petition.

could have been raised on appeal in the guise of ineffective assistance of counsel. (DE#12:Ex.16:27). The State pointed out that trial counsel filed a motion to suppress arguing the issues raised by Petitioner, renewed the motion to suppress during trial, and also filed a motion for new trial based in part on the denial of the motion to suppress. (DE#12:Ex.16:28). Thus, the issue was preserved for appellate review. (DE#12:Ex.16:28). The State argued in the alternative that Petitioner's claim was meritless and pointed out that Petitioner's codefendant raised the same issue on direct appeal and the appellate court held that historical cell phone site information was admissible at trial notwithstanding that it was obtained without a warrant. (DE#12:Ex.16:28). Petitioner filed a motion for rehearing, which was denied by the postconviction court and thereafter he appealed the denial of postconviction relief. The Fourth District Court of Appeal affirmed per curiam without a written opinion.

Under Florida law, claims that could have been raised on direct appeal may not be couched in terms of ineffective assistance of counsel to circumvent the procedural bar. See Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); see also Douglas v. State, 141 So.3d 107, 127 (Fla. 2012), as revised on denial of reh'g (Sept. 13, 2012) ("a defendant may not attempt to circumvent the procedural bar to his claims by raising conclusory allegations of ineffective assistance of counsel") (citation omitted); Medina v. State, 573 So.2d 293, 295 (Fla. 1990) (stating that claims of ineffective assistance of counsel should not be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal). Thus, the State argued that Petitioner's claim of ineffective

assistance of counsel was procedurally barred.

However, it is unclear from the record whether the state trial and appellate courts have relied on the state procedural bar when ruling on Petitioner's claim. The State's argument also addressed the merits of Petitioner's claim, and by adopting the State's response, the trial court made it equally plausible that it denied Petitioner's claim based on the procedural default issue or based on the merits. The appellate court affirmed per curiam without written opinion the lower court's ruling, making it difficult for this Court to conclude that procedural default was the principal basis for the state court's denial of relief. See Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (stating that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar" (quoting Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)); Harmon v. Barton, 894 F.2d 1268, 1274 (11th Cir. 1990) (before a federal court can deny a federal habeas petition "on the grounds of state procedural default, there must have been a clear and express statement by the state trial court that its judgement was based upon procedural default" which would allow the federal court to conclude without a doubt that the state appellate court's per curiam affirmance was also based upon that ground).

Since the State addressed the merits of Petitioner's claim in the alternative and there is no clear and express statement by the state trial court that its denial of Petitioner's claim was based on procedural default or by the state appellate court that its affirmance was based upon that ground, for purposes of

judicial economy it is best to address the merits of Petitioner's claim nine.

The Court need not decide whether these grounds are unexhausted and / or procedurally barred. Section 2254(b)(2), as amended by the AEDPA, permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. Section 2254, as amended by AEDPA, allows a federal court to deny claims raised in a habeas corpus petition on the merits, notwithstanding a petitioner's failure to exhaust those claims in state courts. 28 U.S.C. §2254(b)(2); see also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"); Chambers v. Bowersox, 157 F.3d 560, 564 n.4 (8th Cir. 1998) (stating that "[t]he simplest way to decide a case is often the best").

Since the Petitioner cannot prevail on the merits of any of the claims raised in this federal habeas petition, this Court will forgo the procedural bar and exhaustion analysis and address the substance of Petitioner's claims.

C. Claims of trial court error

In **claim one,** the Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights to a fair and impartial trial and due process of the law when the trial court unreasonably applied federal law and United States Supreme Court precedent. Petitioner contends that the trial court committed reversible error when it allowed the State to introduce collateral crime evidence of a 24-hour robbery that occurred before the offenses for which he was convicted in the instant

case. (DE#1: 6A). Petitioner also alleges there was no proper hearing to resolve the disputed facts that the prejudicial weight of the evidence outweighed its probative value. (DE#1:6A).

As previously discussed,[9] the enactment of AEDPA brought about a more deferential standard for habeas review of state court decisions under section 2254. The federal habeas court will engage in an independent review of the merits of a petitioner's constitutional claim, only if it finds that the petitioner has satisfied AEDPA and section 2254 (d) by showing that the state court's adjudication of the merits of the claim resulted in an unreasonable application of the relevant legal principles. See, e.g., Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); Jones v. Walker, 540 F.3d 1277, 1288 (11th Cir. 2008).

Here, Petitioner states in a conclusory fashion that the trial court unreasonably applied federal law and United States Supreme Court precedent, without identifying a single principle or precedent. Contrary to his allegations that there was no proper hearing on the issue of the admissibility of Williams rule evidence, the record reflects that the trial court held an extensive hearing. The court heard testimony from various witnesses to the robberies; a Broward Sheriff's Office ("BSO") crime laboratory technician who conducted DNA testing on the codefendant's hat; two detectives who worked on the case; and the records custodian for MetroPCS. (DE#12:Ex.6). Counsel had the opportunity to present argument to the court at the conclusion of the hearing. (DE#12:Ex.8:28-43). The trial court also reviewed surveillance videos of the robberies at issue. (DE#12:Ex.6).

In its order on the admissibility of Williams rule evidence,

---

[9] See supra at 9-12.

the trial court found that the evidence of the September 4, 2007 robbery was relevant and admissible for the purposes proffered by the State, (DE#12:Ex.1:17-29), namely, to demonstrate defendants' motive, intent, modus operandi, and absence of accident or mistake when committing the October 8, 2007 robberies. (DE#12:59). The court further found that the collateral crime evidence was inextricably intertwined with the charged offenses and that Petitioner's participation in the September 4, 2007 robbery was proved by clear and convincing evidence. (DE#12:Ex.1:58-59). The trial court conducted a rule 403 analysis and concluded that the probative value of the proffered evidence was not outweighed by the danger of unfair prejudice. (DE#12:Ex.1:59). Finally, the court found that the failure of the police to obtain judicial approval prior to requesting the cell tower logs was subsequently cured, as allowed by <u>Mitchell v. State</u>, 25 So.3d 632 (Fla. 4th DCA 2009), by obtaining a court order in compliance with section 943.23, Florida Statutes. (DE#12:Ex.1:64). The court noted that because the Fourth Amendment was not implicated, any remedy for the violation was governed by the statute, which did not include suppression or exclusion of evidence as a remedy. (DE#12:Ex.1:64).

The Fourth District Court of Appeal affirmed the trial court's ruling, finding that "based on the numerous similarities between the robberies, the trial court acted within its discretion when it determined that this <u>Williams</u> rule evidence was admissible." <u>Johnson v. State</u>, 112 So. 3d 564, 566 (Fla. 4th DCA 2013); (DE#12:Ex.12).

Federal courts recognize the same principle as Florida courts[10] that other crimes evidence may be admitted when offered

---

[10] See <u>Fla.Stat</u>. §90.404(2)(a); <u>Buenano v. State</u>, 527 So.2d 122, 124 (Fla. 1987); <u>Williams v. State</u>, 110 So.2d 654 (Fla. 1959); <u>Vail v. State</u>, 890 So.2d 373, 376

for appropriate purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity.  Hall v. Wainwright, 733 F.2d 766 (11th Cir. 1984); Britton v. Rogers, 631 F.2d 572, 575 (8th Cir. 1980).

After a thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not the result of an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented during the hearing on Petitioner's motion to exclude Williams rule evidence. The Petitioner has failed to meet the burden of showing unreasonable application under section 2254. See, e.g., Woodford v. Visciotti, 537 U.S. 19, 25, 123 S.Ct.  357, 360, 154 L.Ed.2d 279 (2002) (noting that it is the habeas applicant's burden to establish that the state court applied United States Supreme Court precedent "to the facts of his case in an objectively unreasonable manner").

Moreover, Petitioner's claim is also without merit. When reviewing a state court's evidentiary rulings, a federal court "is limited to a determination of whether the error, if any, was of such magnitude as to deny the petitioner ... a fundamentally fair trial." Futch v. Dugger, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983) (internal quotation marks and citations omitted)).

Generally, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in fashioning their own evidentiary rules. See, e.g., Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (noting that

(Fla. 3 DCA 2004); Henry v. State 649 So.2d 1366, 1367-68 (Fla. 1994); Jackson v. State, 403 So.2d 1063, 1066 (Fla. 1981).

there is "a well-documented resistance to granting relief when a habeas petition alleges a federal claim based merely on a state evidentiary ruling"); Manes v. Wainwright, 512 F.2d 88, 92 (5th Cir. 1975) ("The due process clause has always been interpreted as permitting the states wide latitude in fashioning rules of evidence and procedure.").

In this case, as reflected below, the testimony regarding the September 4, 2007 robbery established sufficient similarities to the October 8, 2007 robberies to be admissible as relevant evidence to prove that Petitioner was present during the October 8, 2007 robberies as a lookout, not by accident or mistake.

At trial, the State presented evidence of the robberies committed at three 24-hour pharmacies on October 8, 2007. Yvon Pelletier, the night shift supervisor at the Lauderhill CVS Pharmacy on October 8, 2007, testified that two masked men, one taller and the other one shorter, wearing gloves and each carrying a gun, robbed the store, taking a few thousand dollars. (DE#12:Ex.9:767,769-70,771,781). He recounted that the shorter man waived for him to get out of the stock room (DE#12:Ex.9:69-70). After Mr. Pelletier left the stock room, the shorter man instructed him and the cashier, Darlene Holford, to put their cell phones on the floor and to lie on the floor. (DE#12:Ex.9:769-70). Mr. Pelletier recounted that he gave the safe combination to the shorter man, and after the man opened the safe, he made Mr. Pelletier go with him through the pharmacy to open the registers, and then to the front of the store to open the registers and cash drawer. (DE#12:Ex.9:772). The State also offered similar testimony by Doreen Holford, the night cashier at the Lauderhill CVS, and Tameka Thomas, a CVS customer who came into the store around 3:30 a.m. while the robbery was unfolding.

(DE#12:Ex.9: 788,789-91, 852-55).

Linda Coe, the night shift supervisor at the Margate CVS Pharmacy, testified that around 4 a.m. on October 8, 2007, while she was in the store with two other employees, Travis, the cashier, and Sherifah, the pharmacist, two men walked into the store. (DE#12:Ex.9:861-62). One of the men, wearing a skeleton mask and carrying a gun, went to the cosmetic area to get the cashier. (DE#12:Ex.9:863). The other man, who was dressed all in black and was wearing a ski mask, pointed a gun at her and told her to get down. (DE#12:Ex.9:862-63). He asked her how many employees were in the store and she told him there were three people. (DE#12:Ex.9:863). The man dressed in black grabbed Ms. Coe by her arm, and directed her toward the pharmacy, while the man with the skeleton mask was walking the cashier at gunpoint toward the pharmacy. (DE#12:Ex.9:864). When they got close to the pharmacy, the man dressed in black instructed Ms. Coe to call the pharmacist; he then told the pharmacist to open the register and give him the money. (DE#12:Ex.9:864). Thereafter, the cashier, the pharmacist, and Ms. Coe were brought back to the front of the store and Ms. Coe was directed to open the registers so the two men could take the money. (DE#12:Ex.9:864).

Nelson Melendez, assistant manager overnight with the Coconut Creek Walgreens, testified that around 4:20 a.m. on October 8, 2007, he was working with the pharmacist, Satpal Sautman, when two masked men with guns came into the store (DE#12:Ex.9:803-05). One of the men went to the pharmacist and another one took Mr. Melendez into the office and had him open the safe. (DE#12:Ex.9:804-05). Thereafter Mr. Melendez was taken to all the registers throughout the store and asked to open them. (DE#12:Ex.9:805,808,809-10).

Satpal Sautman testified that one of the masked men jumped over the pharmacy counter, held her at gunpoint and asked her to give him the money in all the registers. (DE#12:Ex.9:816-818,822-23). She further recounted that at the end the two men ordered them to lie on the floor. (DE#12:Ex.9:821).

In addition, the State presented the <u>Williams</u> rule evidence of the September 4, 2007 robbery, which is the evidence challenged by Petitioner. Darlene Ann Kozlowski testified that on September 4, 2007, she was working as overnight supervisor at the CVS pharmacy located at 1501 South Federal Highway in Pompano Beach. (DE#12:Ex.9:827-28). That night, two more employees were present in the store: Alex, at the front desk and J.P., in the pharmacy. (DE#12:Ex.9:828). Ms. Kozlowski testified that around 5:30 a.m. two armed and masked men came in and robbed the store. (DE#12:Ex.9:829-30). She recounted that one of the armed men wanted her to open the safe but she told him she did not have the combination because she was new. (DE#12:Ex.9:830). While she was opening the cash registry for him, the other armed man had Alex and J.P. lying on the ground. (DE#12:Ex.9:832-33).

The State further presented the testimony of Larry Smith, the records custodian for MetroPCS. (DE#12:Ex.9:878). The call records for Petitioner's cell phone number and his codefendant's cell phone number from September 2, 2007 through October 18, 2007 were introduced into evidence. (DE#12:Ex.9:881-84). The records for September 4, 2007 and October 8, 2007 showed that the two cell phone numbers were making phone calls to each other and were both pinging off the same cell phone towers, which were located close to the 24-hour pharmacies that were being robbed at the time. (DE#12:Ex.9:892-900).

Corporal Paul Yesbeck with the Broward Sheriff's Office

testified that on September 4, 2007 he was assigned to the Pompano Beach District and he responded to a call about an armed robbery at the CVS pharmacy located at 1501 South Federal Highway. (DE#12:Ex.9:966-67). He recounted that he found and collected "a green - or camouflage type hat in front of the store." (DE#12:Ex.9:966-67). Upon reviewing the video surveillance, Corporal Yesbeck realized that one of the suspects in the armed robbery was wearing a similar camouflage hat like the one he found outside the store. (DE#12:Ex.9:968).

Kurt Rhodes, a DNA technician with the crime laboratory of the Broward Sheriff's Office, testified that he analyzed the camouflage baseball hat and was able to develop a major profile that was consistent with that of Petitioner's codefendant, Deitrick Johnson. (DE#12:Ex.9:972,975,982,984). He further testified that he did the statistical calculations for that result and the odds of another person being included or being consistent with the major profile from the hat were one in 3.5 million. (DE#12:Ex:9:985-86).

Dr. Martin Tracey, a professor of biology at Florida International University in Miami, testified that he did some statistical calculations in this case on the molecular work done by Mr. Rhodes. (DE#12:Ex.9:997,1002). He used the National Institute of Standards and Testing database, and he came up with a different result than MR. Rhodes who used the Federal Bureau of Investigation database. (DE#12:Ex:9:1004). According to his statistical calculations, the odds of another person being consistent with the major profile from the hat were one in sixty (60) million. (DE#12:Ex.9:1005).

In addition to being relevant for an admissible purpose, the evidence of the September 4, 2007 robbery was not unduly

prejudicial, and did not become a feature of the trial. Furthermore, the record reflects that prior to the State calling Darlene Ann Kozlowski to testify about the September 4, 2007 robbery, the trial court properly instructed the jury as to the limited purpose for which her testimony was presented:

> THE COURT: . . . The evidence you are about to receive concerning evidence of other crimes, wrongs or acts allegedly committed by the defendants will be considered by you for the limited purpose of providing opportunity, intent, preparation, plan, knowledge, identity in the absence of mistake or accident on the part of the defendants and you shall consider it only as it relates to those issues. However, the defendants are not on trial for a crime, wrong or act that is not included in the Information, that's that charging document in the case.

(DE#12:Ex.9:826-27). The prosecutor in his closing argument reminded the jury that Petitioner was not on trial for the September 4, 2007 robbery and that the only reason why that evidence was presented is for the jury to determine if the Petitioner was the same person involved in the October 8, 2007 robbery, if he had a plan or scheme. (DE#12:Ex.9:1156,1169). During the charging conference, the trial court instructed the jury to consider the evidence of other crimes, wrongs or acts allegedly committed by the Petitioner only to the extent it proved opportunity, intent, preparation, plan, knowledge, identity or absence of mistake on Petitioner's part. (DE#12:Ex.9:1243).

There were sufficient similarities between the robbery committed on September 4, 2007 and the robberies committed on October 8, 2007 to justify the appellate court's conclusion that the trial court did not abuse its discretion when it admitted the Williams rule evidence. The evidence presented showed that all the robberies took place at chain drugstores located in Broward

County in the early morning hours. They were all committed by two male perpetrators wearing dark clothes and masks and carrying guns. In all robberies one of the perpetrators remained in the front of the store while the other would make his way to the back of the store. In all robberies one of the perpetrators would collect all the money in the cash registries and safes. In most of the robberies the perpetrators instructed the employees to lie on the ground. At the time each robbery was committed, Petitioner's cell phone and his codefendant's cell phone were used near the location of the robbery to place phone calls to each other.

For the reasons set forth herein, this Court concludes that Petitioner is not entitled to habeas relief on this claim. The admission of collateral crimes evidence against Petitioner was not an unreasonable application of federal law, nor did it deprive the Petitioner of a fundamentally fair trial, therefore the decision of the state court should not be disturbed. Taylor, 529 U.S. 362, 120 S.Ct. 1495.

In **claim two**, the Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights to a fair and impartial trial and due process of the law when the trial court erroneously denied his motion for a mistrial after the prosecutor improperly commented on his right to remain silent.

Petitioner, once again, alleges in a conclusory fashion that the trial court unreasonably applied federal law and United States Supreme Court precedent without identifying a single such precedent. In addition, he does not plead this claim with specificity. However, a review of his initial brief on direct appeal reveals that he is referring to the following comment made by the prosecutor at the end of his rebuttal argument:

> They had [Timothy Johnson] over a barrel and he figured the best thing to do would be to fess-up, not because he didn't do it, but because he did, because if he didn't do it, he would of [sic] maintained his innocence. He would of [sic] said, sorry, ain't me, isn't me, but he didn't, he admitted to it and that's the witness that [defense counsel] says isn't here that didn't testify, you heard it from Timothy Johnson's mouth, I was the watch-out.

(DE#12:Ex.10:20; Ex.9:1213).

The trial record shows that immediately after the prosecutor concluded the rebuttal argument, defense counsel requested a side bar and made a motion for mistrial. (DE#12: Ex.9:1214). Defense counsel told the court that he understood the way the argument was intended given the rest of the arguments in the case. (DE#12: Ex.9:1215). However, he was concerned that the prosecutor's argument was "fairly susceptible" to being a comment on Petitioner's right to remain silent, given that he had not testified at trial. (DE#12: Ex.9:1215). The prosecutor explained that his comment was in reference to defense counsel's argument that there was no witness to connect the Petitioner to the crime. (DE#12: Ex.9:1216). To counter that, the prosecutor referenced the Petitioner's statement to the police and urged the jury to review his videotaped statement again during deliberations. (DE#12:Ex.9:1216).

The trial court found that the prosecutor's comment was not a reference to Petitioner's right to remain silent, but a reference to his statement to the police which was presented to the jury during the trial. (DE#12:Ex.9:1217-18). The trial court further found that even if the comment could be interpreted as a comment on the right to remain silent, it was invited by defense counsel's argument that there was no witness to connect the Petitioner to the robberies. (DE#12: Ex.9:1217-18). Therefore,

the court denied the motion for mistrial. The Fourth District Court of Appeal affirmed on this issue without addressing the Petitioner's argument in its written opinion. Johnson v. State, 112 So. 3d 564, 565 (Fla. 4th DCA 2013); (DE#12:Ex.12).

The Fifth Amendment prohibits commenting on a defendant's silence at trial and asking the jury to draw an adverse inference from that silence. See United States v. Robinson, 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988); Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

Florida has a "very liberal" standard for what constitutes improper comment on a defendant's right to remain silent and to decline to testify against himself in a criminal proceeding. Rodriguez v. State, 753 So.2d 29, 37 (Fla. 2000) (quoting State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). Thus, "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." Rodriguez, 753 So.2d at 37 (quoting State v. Marshall, 476 So.2d 150, 153 (Fla. 1985)). Any comment that is "fairly susceptible" of being interpreted as a comment on silence is treated as such and creates a "high risk" of error. See Grier v. State, 934 So.2d 653, 655 (Fla. 4th DCA 2006) (citing DiGuilio, 491 So.2d at 1135) and Rodriguez, 753 So.2d at 37 (citing DiGuilio, 491 So.2d at 1135-36).

Under Eleventh Circuit precedent, the test for determining whether a prosecutor's statement constitutes an impermissible comment on a defendant's right to remain silent is to ask whether (1) the statement is manifestly intended as such a comment; or (2) the statement is such that a jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. United States v. Blankenship, 382 F.3d 1110, 1128 (11th

Cir. 2009) (quoting <u>United States v. Knowles</u>, 66 F.3d 1146, 1162-63 (11th Cir. 1995)). Thus, a mere possibility or probability that the jury construed the prosecutor's statement as a comment on the defendant's failure to testify is not enough. <u>See</u> <u>Blankenship</u>, 382 F.3d at 1128 (quoting <u>Knowles</u>, 66 F.3d at 1163).

It is the defendant's burden to establish the existence of one of these two criteria. <u>Issacs v. Head</u>, 300 F.3d 1232, 1270 (11th Cir. 2002) (quoting <u>Knowles</u>, 66 F.3d 1146). The court must examine the comment in the context in which it was made to determine the prosecutor's motive and the impact the statement had on the jury. <u>Isaacs</u>, 300 F.3d at 1270 (quoting <u>Knowles</u>, 66 F.3d 1146). A mistrial is granted only upon a showing by the defendant of "substantial prejudice." <u>United States v. Chastain</u>, 198 F.3d 1338, 1352 (11th Cir. 1999). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." <u>United States v. Eckhardt</u>, 466 F.3d 938, 947 (11th Cir. 2006).

In this case, a review of the prosecutor's statement in light of the context in which it was made reveals that the statement was not manifestly intended as a comment on Petitioner's right to remain silent, nor was it such that his jury would naturally and necessarily interpret it to be a comment on Petitioner's failure to testify at trial.

Defense counsel in his closing argument repeatedly argued that the state did not present a single witness to connect the Petitioner to the robberies, to show that he was the one actually using his cell phone during the robberies, or that his car was outside the stores during the robberies. (DE#12:Ex.9:1178-

80,1182,1185,1197-98,1199,1201).   The   prosecutor   began   his rebuttal argument by pointing out his disagreement with defense counsel's statement that there was no witness to put Petitioner's phone in his hands during the robberies:

> He can put it in his hands. He described to you on that video and to the detectives how he used that phone, why he used that phone and when he used that phone... Mr. Johnson told you he was a robing [sic] patrol, he would go up and down and make sure the coast was clear . . .

(DE#12:Ex.9:1205).

> Mr. Johnson admitted the involvement with it, he admitted being the lookout, he admitted how it worked.

(DE#12:Ex.9:1212).

During   closing   argument   and   rebuttal,   the   prosecutor repeatedly urged the jury to watch again during deliberations the video of Petitioner's statement to the police. (DE#12:Ex.9:1157-58,1204,1213).  In  fact,  the  prosecutor  prefaced  the  alleged comment  on  Petitioner's  right  to  remain  silent  with  the  same recommendation: "Look at the video . . . that's the witness that [defense counsel] says isn't here that didn't testify, you heard it  from  Timothy  Johnson's  mouth,  I  was  the  watch-out." (DE#12:Ex.9:1213).   Thus,   clearly,   the   prosecutor's   comment referred to Petitioner's statement to the police and not to his failure to testify at trial.

Where,  as  here,  there  is  an  equally  plausible  explanation for a prosecutor's remark, the court cannot find the prosecutor manifestly  intended  to  comment  on  Petitioner's  failure  to testify. Unites States v. Swindall, 971 F.2d 1531 (11th Cir. 1992) (citing Samuels v. United States, 398 F.2d 964, 968 (5th Cir. 1968)). Even defense counsel acknowledged when he made the motion  for  mistrial  that  he  understood  the  context  of  the

prosecutor's statement. He was concerned that given the fact that Petitioner did not testify at trial, the prosecutor's comment was susceptible to being a comment on the Petitioner's right to remain silent. (DE#12: Ex.9:1215).

Even assuming arguendo that the prosecutor's comment could have been deemed improper under Florida's more liberal standard, it was not a violation of Petitioner's Fifth Amendment right to remain silent. See Bertolotti v. Dugger, 883 F.2d 1503, 1524 (11th Cir. 1989) (finding that even though the prosecutor's comment to the jury during the penalty phase may have been improper under Florida law, it did not violate the defendant's Fifth Amendment right to remain silent). It is clear from the context of the prosecutor's statement that he did not manifestly intend it as a comment on Petitioner's right to remain silent. To the contrary, he intended it as a comment regarding Petitioner's statement to the police. Furthermore, the comment is not such that the jury would have naturally and necessarily interpreted it as a comment on Petitioner's failure to testify. The jury was urged to watch the videotaped statement of Petitioner to the police and was reminded that through his own admissions, Petitioner became the very witness defense counsel kept saying during closing argument that the State failed to present.

The comment was within the bounds of reasonable prosecutorial argument and was a fair response to the arguments advanced by defense counsel to the jury. See United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) (explaining that the "fair response rule" entitles a prosecutor to respond to arguments made by defense counsel to the jury (quoting United States v. Smith, 700 F.2d 627, 634 (11th Cir. 1982))). In addition, the jury was properly instructed not to interpret Petitioner's decision not to testify as an admission of guilt and

not to allow that decision to influence them in any way. (DE#12:Ex.9:742, 1246). "A jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed 727 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95L.Ed.2d 176 (1987)). Given Petitioner's own admission that he was involved in the robberies as a lookout and the cell phone records placing him in the same area where the robberies were committed on September 4, 2007 and on October 8, 2007, and showing that he was in contact with the codefendant while the robberies were committed, there is no reasonable probability that but for the prosecutor's comment the outcome of the case would have been different.

For the reasons set forth herein, this Court finds that the state appellate court's determination that the Petitioner was not entitled to relief on this claim is not "contrary to" or an "unreasonable application of" clearly established federal law or based on an unreasonable determination of the facts and it should not be disturbed. Taylor, 529 U.S. 362, 120 S.Ct. 1495.

D. Claims of Ineffective assistance of appellate counsel

In **claim three**, the Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights to meaningful appellate review and due process because of unreasonable application of federal law and United States Supreme Court precedent by the state court. (DE#1:8A). More specifically, Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise and / or argue on direct appeal the denial of the motion to suppress cell tower logs, which was properly preserved for appellate review. (DE#1:8A).

Applying the "doubly deferential" standard required when

reviewing Petitioner's claim of ineffective assistance of appellate counsel in the instant habeas petition, this Court must determine whether the state court's application of Strickland was unreasonable. Richter, 562 U.S. at 101, 105, 131 S.Ct. at 785, 788. As explained by the United States Supreme Court, a federal habeas court must first determine what arguments or theories supported or could have supported the decision of the state court and then assess the possibility that fairminded jurists could disagree as to whether those arguments or theories are inconsistent with United States Supreme Court precedent. Richter, 562 U.S. at 102, 131 S.Ct. at 786. Only when the state court's ruling on the claim "presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," is a petitioner entitled to habeas corpus relief in federal court. Richter, 562 U.S. at 103, 131 S.Ct. at 786-87.

A full review of the record in this case reveals that appellate counsel's representation was in no way constitutionally deficient for failing to raise this particular claim because even if raised on direct appeal, the claim would not have been successful. See Philmore, 575 F.3d at 1264-65 (to determine if prejudice resulted from appellate counsel's failure to raise a particular claim, the court must assess the merits of the omitted claim (citing Heath, 941 F.2d at 1132)).

The Fourth District Court of Appeal addressed a similar argument in Mitchell v. State, 25 So.3d 632 (Fla. 4th DCA 2009). The court noted that Florida's statutory scheme was similar to the federal scheme. The court relied on the United States Supreme Court's decisions in United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed. 2d 55 (1983) and Smith v. Maryland, 442 U.S.

735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), when it found that historical cell site information does not implicate Fourth Amendment protections because it discloses only the past location of a defendant, without pinpointing his current location in a private area. Mitchell, 25 So.3d at 635. The court held that "historical cell site information is not content-based" and that a cell phone user has no expectation of privacy in historical cell site records. Id.

Most importantly, Petitioner's codefendant raised the exact same issue on direct appeal and the Fourth District Court of Appeal found "no error in the admission of the historical cell site information, even though the records were obtained without a warrant." Johnson v. State, 110 So. 3d 954, 958 (Fla. 4th DCA 2013) ("the exclusionary rule is not a remedy for violations of section 934.23" (quoting Tracey v. State, 69 So.3d 992, 1000 (Fla. 4th DCA 2011) (overruled on other grounds)). The Supreme Court of Florida declined to accept jurisdiction to review the codefendant's case. (DE#12:Ex.24).

Under Florida law, appellate counsel cannot be deemed ineffective for failing to raise a meritless claim in which the underlying issue has already been decided adversely to the defendant. See Seibert v. State, 64 So. 3d 67, 86, 89 (Fla. 2010) as revised on denial of reh'g (Apr. 14, 2011) (citations omitted). Thus, in this case, since Petitioner's underlying claim of fundamental trial court error in denying his motion to suppress cell tower logs was decided adversely to him, he could not show ineffective assistance of appellate counsel for failure to raise that claim. Diaz, 402 F.3d 1136, 1144-45 (appellate counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim on direct appeal).

The Petitioner has not cited any clearly established United States Supreme Court precedent or federal law that was unreasonably applied by the state court when denying relief on this claim and this Court's research has revealed none. The Eleventh Circuit, applying United States Supreme Court precedent, has recently addressed the issue whether the government violated a defendant's Fourth Amendment rights by obtaining historical cell tower location information without a search warrant or a showing of probable cause. United States v. Davis, 785 F.3d 498 (11th Cir. 2015), cert. denied, __ U.S. __, 136 S.Ct. 479, 193 L.Ed.2d 349 (2015). The court held that the defendant had "no subjective or objective reasonable expectation of privacy in MetroPCS's business records showing the cell tower locations that wirelessly connected his calls" at or around the time when six out of the seven robberies of which he was convicted took place. Davis, 785 F.3d at 511. In addition, the Eleventh Circuit has declined to apply the exclusionary rule to non-constitutional violations of law if a particular statute does not provide for exclusion. United States v. Thompson, 936 F.2d 1249, 1251 (11th Cir. 1991).

Therefore, for the reasons stated herein, this Court finds that the state court's denial of habeas relief on this claim was not "contrary to" or an "unreasonable application of" clearly established federal law or based on an unreasonable determination of the facts and it should not be disturbed. Taylor, 529 U.S. 362, 120 S.Ct. 1495.

In **claim four**, Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights to meaningful appellate review and due process because of unreasonable application of federal law and United States Supreme Court precedent by the state court. (DE#1:8A). More specifically, Petitioner claims that

appellate counsel rendered ineffective assistance by failing to raise and / or argue on direct appeal the court's error in allowing a joint trial after granting the motion to sever defendants. (DE#1:8C).

In support of this argument, Petitioner states that during the hearing on the motion to sever defendants, the State conceded that severance was necessary due to unavoidable <u>Bruton</u> issues. Yet the trial court allowed the two trials to be conducted together and instructed the two juries "that they were separate." (DE#1:8C). Although Petitioner does not identify any inadmissible evidence under <u>Bruton</u> that was admitted at trial against him, he seems to imply that the admission of his codefendant's statement to the police prejudiced him. A review of his petition for writ of habeas corpus filed in the Fourth District Court of Appeal reflects that Petitioner also contended that the DNA evidence against his codefendant was improperly presented to his jury as a result of the joint trial. (DE#12:Ex.15).

In <u>Bruton</u>, the United States Supreme Court held that the admission of a codefendant's confession that on its face inculpated the defendant during a joint trial violated the Confrontation Clause notwithstanding the fact that the jury was instructed to consider the statement only against the codefendant. <u>Bruton</u>, 391 U.S. at 135-37, 88 S.Ct. at 1627-28. As explained by the Eleventh Circuit, a defendant's confrontation right is violated when the court admits a codefendant's statement which directly inculpates the defendant and "in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt." <u>United States v. Schwartz</u>, 541 F.3d 1331, 1351 (11th Cir. 2008); <u>United State v. Beale</u>, 921 F.2d 1412, 1425 (11th Cir. 1991). Thus, admission of a codefendant's statement is

not error under <u>Bruton</u> if the statement is not incriminating on its face and becomes so only after it is linked with other evidence introduced at trial. <u>United States v. Arias</u>, 984 F.2d 1139, 1142 (11th Cir. 1993).

Here, the record reflects that the trial court impaneled two juries. The court instructed the members of Petitioner's jury not to have contact with the members of his codefendant's jury, and during breaks the two juries were always taken to separate jury rooms on different floors. DE#12:Ex.9:701;703-04;707-11;746-47). In addition, the two juries were separately instructed. (DE#12:Ex.9:1230-56;1269-87).

The record further reflects that Petitioner's jury did not hear testimony regarding codefendant's statement to the police or any argument regarding that statement. Initially, Petitioner had no objection to his jury being present while a detective testified regarding the codefendant's statement to the police. It was Petitioner's understanding that codefendant's statement was neither directly nor indirectly implicating him. (DE#12:Ex.9:951-53). However, when the trial court pointed out the potential for tainting the jury with incriminating evidence of codefendant's consciousness of guilt, Petitioner and his counsel made the decision to exclude the Petitioner's jury while testimony about the codefendant's statement to the police was presented and during closing argument. (DE#12:Ex.9:953-55,957,1043,1044-50,1099,1107-49). Under these facts, there was no <u>Bruton</u> error.

Even if the Petitioner's jury had heard testimony about the codefendant's statement, it would not have been a <u>Bruton</u> error because the statement, as acknowledged by Petitioner, (DE#12:Ex.9:951-53), was not incriminating on its face:

Q. Did you ask [Dietrick Johnson] if he knew an

individual by the name of Tim Johnson?
A. Yes, sir, I did.
Q. What did he tell you?
A. He told me he didn't know anyone by the name of Tim Johnson.
Q. Did you ask him anything else about Mr. Johnson?
A. I asked him if he had ever been in telephonic contact with Mr. Johnson, if he ever spoke to him on the phone.
Q. What did he say about that?
A. He said he's never spoken with him on the phone before.
Q. When you asked him that question, were you aware of the cellular phone records that are now part of the evidence in this particular case?
A. Not in detail that we currently have. I was aware of certain cellular phone records as far as individuals being pinged, if you will, in different towers at different times during the robberies, but as far as call details, no, sir.

(DE#12:Ex.9:962).

Since there is nothing in the record to support on direct appeal a claim of Bruton error regarding the admission of codefendant's statement to the police, appellate counsel cannot be deemed deficient for not raising a frivolous claim. See Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir.1990) (appellate "[c]ounsel cannot be labeled ineffective for failing to raise issues which have no merit"). In addition, Petitioner suffered no prejudice due to his appellate counsel's failure to raise this issue on appeal because the claim would not have been successful. See Rimmer v. State, 59 So.3d 763, 788 (Fla. 2010) (finding no Bruton violation in trial court's denial of motion to sever defendants where the codefendant's statement was inadmissible and no ineffective assistance of appellate counsel for not raising the issue on appeal). Since the omitted claim would not have been successful if raised on appeal, appellate counsel's performance did not affect the outcome of the case on appeal. Philmore, 575

F.3d at 1265 (citing <u>Heath</u>, 941 F.2d at 1132).

To the extent Petitioner is arguing that his appellate

counsel was ineffective for not arguing on appeal that the DNA

evidence connecting his codefendant to the robbery committed on

September 4, 2007 was improperly admitted against him as a result

of the joint trial, that claim is without merit. As discussed

above,[11] the DNA evidence was part of the collateral crimes

evidence that was found admissible under the <u>Williams</u> rule.

Appellate counsel raised the issue of the admissibility of

collateral crime evidence on appeal and therefore Petitioner

cannot point to any omission by appellate counsel that would

entitle him to relief.

Accordingly, the state appellate court's denial of habeas

relief on this claim was not "contrary to" or an "unreasonable

application of" clearly established federal law or based on an

unreasonable determination of the facts and it should not be

disturbed. <u>Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495.

In **claim five**, Petitioner argues that he was deprived of his

Sixth and Fourteenth Amendment rights to meaningful appellate

review and due process because of unreasonable application of

federal law and United States Supreme Court precedent by the

state court. (DE#1:8A). More specifically, he contends that his

appellate counsel rendered deficient performance by failing to

raise preserved error of unfair and disproportionate racial

makeup of the jury. (DE#1:8A,8E). He alleges that his jury had an

imbalanced racial makeup because his codefendant chose his jury

first, striking twenty-four (24) members of the venire pool,

including four (4) African Americans, thus leaving Petitioner

---

[11] <u>See supra</u> at 21-30.

with a disproportionate amount of Caucasian jurors.

It is well-settled that the Sixth Amendment guarantees a criminal defendant the right to be tried by a jury drawn from a fair cross-section of the community. <u>Duren v. Missouri</u>, 439 U.S. 357, 359, 99 S.Ct. 664, 666, 58 L.Ed.2d 579 (1979), <u>Taylor v. Louisiana</u>, 419 U.S. 522, 526-31, 95 S.Ct. 692, 695-98, 42 L.Ed.2d 690 (1975); <u>Cunningham v. Zant</u>, 928 F.2d 1006, 1013 (11th Cir. 1991). As explained by the Eleventh Circuit, to establish a prima facie case that a jury selection process does not produce a fair cross-section of the community, a defendant must show three things: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of that group in venires is unfair and unreasonable in relation to the number of such persons in the community; and (3) the underrepresentation is caused by systemic exclusion of the group from the jury selection process. <u>United States v. Grisham</u>, 63 F.3d 1074, 1078 (11th Cir. 1995) (citing <u>Duren</u>, 439 U.S. at 364, 99 S.Ct. at 668).

A full review of the record reveals that the trial court and the parties had a lengthy discussion about the manner in which the two juries would be selected. (DE#12:Ex.9:24-26). The parties were in agreement that codefendant would pick his jury first. (DE#12:Ex.9:24-26,30-31). As pointed out by the trial court, the clerk's office had randomly assigned case number 09-17837CF10**A** to codefendant and case number 09-17837CF10**B** to Petitioner, without any input from the court or the parties. (DE#12:Ex.9:26). Initially, Petitioner's trial counsel had no issue with that selection process and did not object to the racial makeup of the venires from which his jury was selected. (DE#12:Ex.9:25,26,31). Trial counsel expressed his concern regarding the racial makeup of the venire pool only after the codefendant's jury was picked and four (4) African American jurors were selected to serve on

his jury. (DE#12:Ex.9:690-91, 722-24). The record reflects that one African American juror was selected to serve on Petitioner's jury and that the alternate juror was African American. (DE#12:Ex.9:723).

Here, Petitioner has not expressed any dissatisfaction with the venire as a whole and has not made any allegation that African Americans were systemically excluded from the venires from which his jury was drawn. Rather, he challenges the fact that his codefendant selected his jury first and eliminated four (4) African Americans from the pool, allegedly leaving Petitioner with a racially unbalanced pool from which to choose his jury. The law guarantees a defendant the right to a jury selected from a venire that does not systematically exclude a particular group in the community. United States v. Green, 742 F.2d 609, 611 (11th Cir. 1985). The very fact that Petitioner had a pool with fewer African Americans than his codefendant is due to that racial group's inclusion in the overall jury selection process and not to a discriminatory exclusion of African Americans. In addition, Petitioner had an equally random chance of being the first to select his jury from a list of qualified persons, the composition of which he has not challenged. As explained by the trial court, the assignment of case numbers was randomly done by the clerk's office without any input from the court and the parties.

Moreover, a defendant is "not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinct groups in the community and thus fail to be reasonably representative." Green, 742 F.2d at 611 (citing Taylor, 419 U.S. at 538, 95 S.Ct. at 701). The Sixth Amendment does not require "that petit juries actually chosen must mirror the community and reflect the various distinctive

groups in the population." <u>Taylor</u>, 419 U.S. at 538, 95 S.Ct. at 702. The United States Supreme Court has specifically declined to extend the fair cross-section requirement to petit juries. <u>Lockhart v. McCree</u>, 476 U.S. 162, 106 S.Ct. 1758, 1764-65, 90 L.Ed.2d 137 (1986) ("We have never invoked the fair-cross-section principle . . . to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large . . . . We remain convinced that an extension of the fair-cross-section requirement to petit juries would be unworkable and unsound."). In explaining its rationale for this decision, the Supreme Court noted that it is a practical impossibility to provide each criminal defendant with a "truly representative petit jury." <u>McCree</u>, 476 U.S. at 173-74, 106 S.Ct. at 1765 ("The point at which an accused is entitled to a fair cross-section of the community is when the names are put in the box from which the panels are drawn." (quoting <u>Pope v. United States</u>, 372 F.2d 710, 725 (CA8 1967), <u>vacated on other grounds</u>).

In this case, Petitioner's jury included one African American juror and although that might not be a fair cross-section of the community, it is under no circumstances a violation of his Sixth Amendment right. Petitioner is not entitled to a jury which necessarily includes African Americans merely because he is African American. <u>Green</u>, 742 F.2d at 612.

Since the omitted claim would not have been successful if raised on direct appeal, appellate counsel's performance did not affect the outcome of the appeal. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); <u>Eagle v. Linahan</u>, 279 F.3d 926, 943-44 (11th Cir. 2001). Accordingly, the state appellate court's denial of Petitioner's instant claim of ineffective assistance of appellate counsel was not in conflict with clearly established federal law or based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding and it should not be disturbed. Taylor, 529 U.S. 362, 120 S.Ct. 1495.

In **claim six**, Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights to meaningful appellate review and due process because of unreasonable application of federal law and United States Supreme Court precedent by the state court. (DE#1:8A). More specifically, he contends that his appellate counsel rendered deficient performance by failing to raise on direct appeal the admission of unauthenticated evidence. (DE#1:8F). Petitioner alleges that at trial, the State was allowed to introduce into evidence over defense objection, maps of the area showing Petitioner's location at the time of the robberies. Those maps were prepared by Larry Smith, MetroPCS custodian, who lived in Dallas, Texas and was not familiar with the Broward County locations depicted on the maps. (DE#1:8F). Petitioner claims that the admission of this evidence was extremely prejudicial because it could be considered the decisive factor in the jury's verdict. (DE#1:8F).

A full review of the record shows that the trial court heard extensive argument from counsel prior to overruling the objection to the admissibility of the maps. (DE#12:Ex.9:901-08,917-27). The trial court ruled that the maps were not hearsay and were admissible, provided the State would authenticate them during Detective Armando Enrique's testimony. The court concluded that the defense objection went to the weight of the evidence not to its admissibility. (DE#12:Ex.9:927).

Larry Smith testified that in this case he prepared a series of maps of each relevant cell tower location, by using Microsoft Streets and Trips. (DE#12:Ex.9:900-01,931). He admitted not being

familiar with the Broward County area. (DE#12:Ex.9:900). He explained that each tower covers a 360-degree range and in order to maximize the number of cell phones that connect to a tower, the 360-degree range is divided in sectors. (DE#12:Ex.9:901,930). He recounted that based on the MetroPCS records, he input on the maps the towers and sectors where the phone calls between Petitioner and his codefendant were made. (DE#12:Ex.9:931). During his testimony, the maps were received into evidence over defense objection. (DE#12:Ex.9:932).

Detective Enrique testified that he was familiar with the area depicted in the maps created by Larry Smith and as part of his investigation he visited the areas where the robberies occurred on September 4, 2010 and October 8, 2010 and the specific cell towers related to this case. (DE#12:Ex.9:940-41,942,943). He further testified that the maps fairly and accurately depicted the crime scene locations and the cell phone towers at issue in this case. (DE#12:Ex.9:942,943).

Appellate counsel's representation was in no way constitutionally deficient for failing to raise this particular claim, because even if raised on direct appeal, the claim would not have been successful. See Philmore, 575 F.3d at 1264-65.

In Gosciminski v. State, 132 So.3d 678, (Fla. 2013), the Supreme Court of Florida considered a similar issue to the underlying claim raised by Petitioner. The State in that case presented at trial the testimony of a Nextel engineer regarding maps of the cell towers, the coverage areas of the towers, propagation information, and specific cell phone calls made or received by the defendant. Id. at 697. The engineer explained how he created the diagrams with the cell tower locations and sector coverage. Id. When the State wanted to introduce the diagrams

into evidence the defense objected, arguing that they were confusing and hearsay, unless the engineer had personal knowledge of the location of the towers. Id. The trial court found that the diagrams were neither misleading nor hearsay and allowed them into evidence, concluding that the defense objection went to the weight of the evidence not to its admissibility. Id. The Supreme Court of Florida found that the trial court did not abuse its discretion in admitting into evidence the cell tower diagrams and testimony relating to them. Id. at 698. The diagrams and the testimony regarding cell tower coverage were relevant to the defendant's possible location at the time of the crime and the defense had an opportunity to undermine the weight of the evidence during cross-examination. Id.

Although this case was decided after Petitioner's appeal was over, it is further confirmation that the argument Petitioner claims appellate counsel should have raised on appeal was meritless and thus appellate counsel cannot be deemed ineffective for not raising it. Furthermore, as the court in Gosciminski pointed out, cell phone records, cell cite maps, and testimony explaining them have been widely accepted and admitted into evidence as basic principles of cellular technology. Id. at 697 (citing Gordon v. State, 863 So.2d 1215, 1219 (Fla. 2003); Perez v. State, 980 So.2d 1126, 1131-32 (Fla. 3d DCA 2008); Pullin v. State, 534 S.E.2d 69 (Ga. 2000) (parentheticals omitted)).

Under Florida law, relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. Franklin v. State, 965 So.2d 79, 94 (Fla. 2007). In this case, the evidence was relevant to establish the location of the Petitioner at the time when the robberies were committed. It was further relevant in light of the fact that Petitioner only admitted his involvement in the robberies after

he was confronted with the cell phone records and at trial he defended claiming that his statement to the police was coached and he had no connection to the robberies. (DE#12:Ex.9:1194-96,1199,1200-02). The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

Florida law requires, as a condition precedent to admissibility, that evidence be identified or authenticated. Fla. Stat. §90.901. This requirement can be satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Id. Accordingly, there must be some showing of its genuineness. See DeLong v. Williams, 232 So.2d 246 (Fla. 4th DCA 1970). Once a prima facie showing of authenticity is made pursuant to section 90.901, Florida Statutes, the evidence may be admitted, and the ultimate question of authenticity is left for the jury to determine. The opposing party is free to challenge its genuineness.

In this case, the State presented the testimony of Larry Smith who created the maps and the testimony of Detective Enrique who had personal knowledge of the location of the cell towers at issue and could testify to the accuracy of the maps. Thus, the State made a prima facie case of authenticity and the maps were properly admitted.

Therefore, the trial court did not abuse its discretion in admitting the cell tower maps into evidence and the testimony relating to them and there is no likelihood that the appellate court would have disturbed the trial court's ruling on appellate review absent clear abuse of discretion. See Franklin v. State, 965 So.2d 79, 94 (Fla. 2007) ("The admissibility of evidence is within the sound discretion of the trial court, and the trial court's determination will not be disturbed on appellate review

absent a clear abuse of that discretion.").

Since the omitted claim would not have been successful if raised on direct appeal because there was no error in the trial court, appellate counsel's performance did not affect the outcome of the appeal. See Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Eagle v. Linahan, 279 F.3d 926, 943-44 (11th Cir. 2001). The state appellate court's denial of Petitioner's instant claim of ineffective assistance of appellate counsel was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and it should not be disturbed. Taylor, 529 U.S. 362, 120 S.Ct. 1495.

In **claim seven**, Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment rights to meaningful appellate review and due process because of unreasonable application of federal law and United States Supreme Court precedent by the state court. (DE#1:8A). More specifically, he contends that his appellate counsel rendered deficient performance by failing to raise on direct appeal the denial of the motion to suppress confession. (DE#1:8G). In support of this claim, Petitioner alleges that it was established in the trial court that the officers who interrogated him downplayed his Miranda[12] rights and the information obtained from him was used to gather other evidence in the case that was introduced at trial, thus undermining the integrity of the jury verdict. (DE#1:8G). Finally, Petitioner asserts that this issue was properly preserved for appellate review because trial counsel moved to suppress his statement to the police. (DE#1:8G).

As previously noted, this claim was raised in a petition for

---

[12] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

writ of habeas corpus in Florida's Fourth District Court of
Appeal. It appears that the trial proceedings held on December 3,
2010 when Detective Enrique testified regarding his interview
with the Petitioner and the videotaped interview was played to
the jury were never transcribed and made part of the record on
appeal. The record is also unclear as to whether the state
appellate court had before it the two (2) DVDs containing
Petitioner's videotaped statement to the police. In addition, the
state appellate court denied Petitioner's habeas relief without a
written opinion.

Even assuming arguendo that the state appellate court did
not have before it a full record containing Petitioner's
statement to the police and that it is not entitled to the
deference due to state courts under the AEDPA, Petitioner's claim
still fails.

The record reflects that trial counsel filed a motion to
suppress Petitioner's statement to the police and an accompanying
memorandum of law. (DE#12:Ex.1:25-39). He sought suppression of
Petitioner's statement on the ground that it was not the product
of a free, voluntary, and intelligent waiver. (DE#12:Ex.1:25-39).
He argued that the police engaged in a "question-first and warn-
later" strategy thus undermining the Miranda warnings, and that
the statements should be suppressed pursuant to Missouri v.
Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed. 643 (2004).

The trial court issued an order denying the motion to
suppress after holding a hearing and watching Petitioner's
videotaped statement. (DE#12:Ex.1:44-48). The trial court found
that the facts of Petitioner's case were distinguishable from
those in Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159
L.Ed.2d 643 (2004), where the defendant gave a pre-Miranda
confession. (DE#12:Ex.1:47). In the instant case, Detective

Enrique elicited only background information from the Petitioner prior to giving him the Miranda warnings, in an attempt to build a rapport. (DE#12:Ex.1:47). The trial court further found that there was no evidence that Detective Enrique engaged in a deliberate two-step "question-first and warn-later" strategy similar to that employed in Seibert, and therefore, suppression was not warranted for the post-Miranda statements. Cf. Tengbergen v. State, 9 So.3d 729 (Fla. 4th DCA 2009) (DE#12:Ex.1:47). Since the State conceded that the pre-Miranda statements had no probative value and appeared to be inadmissible, the court did not address the issue whether they were obtained in violation of Miranda. (DE#12:Ex.1:48). The court found that Petitioner: (1) was properly advised of his Miranda rights; (2) clearly understood each of those rights, including that of having an attorney present before and during questioning; (3) freely, voluntarily, knowingly, and intelligently waived his right to remain silent and have an attorney present; and (4) freely and voluntarily agreed to speak to the police after he was advised of his rights. (DE#12:Ex.1:48). The court concluded that the post-Miranda statements were admissible under Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

Under Florida law, "[a] trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Hunter v. State, 8 So.3d 1052 (Fla. 2008) (quoting Schoenwetter v. State, 931 So.2d 857, 866 (Fla. 2006)). Such a ruling is a mixed question of law and fact and is reviewed by appellate courts using a two-step approach. Ross v. State, 45 So.3d 403, 414 (Fla. 2010), as revised on denial of reh'g (Sept. 8, 2010)

(quoting Connor v. State, 803 So.2d 598, 605 (Fla. 2001)). An appellate court defers to a trial court's findings of fact if they are supported by competent, substantial evidence, but reviews de novo a trial court's application of the law to the historical facts. Ross, 45 So.3d at 414 (citing Cuervo v. State, 967 So.2d 155, 160 (Fla. 2007)).

In Elstad, the United States Supreme Court considered the issue whether the initial failure of police officers to administer Miranda warnings tainted defendant's post-Miranda statement. The court held that the post-Miranda statement was admissible and voluntary and explained that a simple failure to administer the warnings, without any actual coercion or other circumstances designed to undermine the suspect's ability to exercise his free will, does not invalidate a subsequent voluntary and informed waiver. Elstad, 470 U.S. at 309, 105 S.Ct. at 1923. "Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." Elstad, 470 U.S. at 309, 105 S.Ct. at 1923.

In Sibert, the United States Supreme Court addressed the technique of interrogating in successive, unwarned and warned phases, and the admissibility of a confession obtained by using such a technique. Seibert, 542 U.S. at 609-11, 124 S.Ct. at 2608-10. Upon arrest, Seibert was questioned without Miranda warnings for approximately thirty (30) to forty (40) minutes until she confessed. Seibert, 542 U.S. at 604-05, 124 S.Ct. at 2606. Then, after a twenty-minute break, she was given the Miranda warnings, she waived her rights and was confronted with her pre-Miranda statements until she confessed again. Seibert, 542 U.S. at 605, 124 S.Ct. at 2606. During the suppression hearing, the officer

who interrogated Seibert testified that he made a conscious decision to withhold the warnings and question first, then give the warnings and question again until he would obtain the same answer. Seibert, 542 U.S. at 605-06, 124 S.Ct. at 2606. The officer acknowledged that the post-Miranda statement was substantially similar to the information obtained prior to Seibert being informed of her rights. Seibert, 542 U.S. at 606, 124 S.Ct. at 2606.

The Supreme Court explained that the threshold issue when this interrogating technique is employed is whether it would be reasonable to find that the warnings could function effectively as required by Miranda and advise the suspect that he has a real choice about giving a statement that is admissible against him. Seibert, 542 U.S. at 611-12, 124 S.Ct. at 2610. The court distinguished Elstad, finding that Seibert's circumstances were at "the opposite extreme" from those presented in Elstad and that the strategy adopted by the police undermined the Miranda warnings rendering the post-Miranda statements inadmissible. Seibert, 542 U.S. at 617, 124 S.Ct. at 2613.

In Tengbergen v. State, 9 So.3d 729 (Fla. 4th DCA 2009), the Fourth District Court of Appeal considered the issue whether a post-Miranda statement obtained as a result of the question first, warn later interrogation technique was admissible against the defendant at trial. The court noted that the decision in Seibert was a four-justice plurality decision and Florida courts have adopted the narrower view expressed in Justice Kennedy's concurring opinion. Tengbergen, 9 So.3d at 735 ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the 'holding of the Court may be viewed as that position taken by those Members who concurred in the judgments of the narrowest

grounds.'" (quoting <u>Marks v. United States</u>, 430 U.S. 188, 193, 97 S.Ct. 990, 996, 51 L.Ed.2d 260 (1977))).

In his concurring opinion, Justice Kennedy agreed with the plurality that the two-stage interview was designed to undermine the <u>Miranda</u> warnings, but he found the plurality test for determining the admissibility of a post-<u>Miranda</u> statement too broad because it applied both to intentional and non-intentional two-stage interrogations. <u>Seibert</u>, 542 U.S. 621-22, 124 S.Ct. at 2015-16 (Kennedy, J., concurring). In his view, "[t]he admissibility of postwarning statements should continue to be governed by the principles of <u>Elstad</u> unless the deliberate two-step strategy was employed," in which case "postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." <u>Seibert</u>, 542 U.S. 622, 124 S.Ct. at 2016 (Kennedy, J., concurring).

In applying the narrower test, the Fourth District Court of Appeal concluded that although the defendant was questioned while handcuffed in the backseat of a police vehicle without <u>Miranda</u> warnings, there was no evidence the officers deliberately employed the "two-step question-first, warn-later" strategy. <u>Tengbergen</u>, 9 So.3d at 735. The pre-<u>Miranda</u> statements provided basic information that was already known to the officers from other witnesses. <u>Tengbergen</u>, 9 So.3d at 735. Furthermore, despite defendant's argument that the officer tried to minimize the importance of the <u>Miranda</u> rights when he told the defendant that he was going to go over them "real quick," the court found that the record clearly showed that each right was read and the defendant acknowledged each right. <u>Tengbergen</u>, 9 So.3d at 735. The appellate court upheld the trial court's denial of the suppression of the post-<u>Miranda</u> statement, finding that it was

"amply supported by the facts and the law." Tengbergen, 9 So.3d
at 736.

Similarly, in the instant case, the trial court's denial of
the motion to suppress Petitioner's statement to the police was
amply supported by the facts and the law. Detective Enrique
testified during the suppression hearing that he was assigned to
investigate a string of pharmacy robberies, including the
September 4, 2007 robbery of the CVS pharmacy at 1501 South
Federal Highway in Pompano Beach, Florida. (DE#12:Ex.7:8,11). As
part of his investigation of the September 4 robbery, he issued a
media release which included footage from the CVS surveillance
video on which Petitioner appeared as a person of interest who
might have witnessed something before the robbery.
(DE#12:Ex.7:11,12,32). Petitioner's mother advised him she saw
him on the surveillance video. (DE#12:Ex.7:11). On September 7,
Petitioner voluntarily went to speak to Detective Enrique to
clear himself of any suspicion and to explain why he appeared on
the surveillance video. (DE#12:Ex.7:11,13,20). He spoke to
Detective Enrique for approximately 13 minutes, explained why he
was in the CVS store that day, and provided Detective Enrique
with his pedigree information, including his cell phone number
and service provider. (DE#12:Ex.7:13,13,26). Petitioner was not a
suspect at that time and he was informed he was free to leave.
(DE#12:Ex.7:20,23,24,26,34,35).

As the investigation was progressing, Detective Enrique
received cell phone records pertaining to Petitioner and his
codefendant and noticed that Petitioner's cell phone appeared on
several cell phone towers during the robberies. (DE#12:Ex.7:16).
On December 21, 2007, Petitioner was arrested for a violation of
probation and was transported to the main building of the BSO for
questioning. (DE#12:Ex.7:17). At that time, BSO was

investigating whether Petitioner had any involvement with the murder of a BSO sergeant in August 2007 and with the robberies, because there was information from another participant in some of the robberies implicating Petitioner. (DE#12:Ex.7:16,52). Detective Enrique interviewed the Petitioner who was shackled to the floor and not free to leave. (DE#12:Ex.7:17,27). For approximately thirty (30) minutes, Detective Enrique spoke to the Petitioner in an attempt to build a rapport, eliciting pedigree information from him, much of which he already knew. (DE#12:Ex.7:17-18,24-25,31-32,35,38-39,41-42).

Thereafter, Detective Enrique advised Petitioner of his Miranda rights, he read the form out loud for Petitioner, who acknowledged each of his rights and agreed to speak to the detective without an attorney present. (DE#12:Ex.7:18,50,63). After Petitioner waived his rights, Detective Enrique began questioning him regarding his participation in the pharmacy robberies and Petitioner admitted his involvement in several of the robberies investigated by Detective Enrique. (DE#12:Ex.7:18).

Like in Tengbergen, the pre-Miranda statement here provided basic information about Petitioner that Detective Enrique already knew. Despite Petitioner's contention that the detective tried to downplay the importance of the Miranda rights when he implied that Petitioner knew and understood his rights before because he had previously been arrested, the record reflects that each right was read by the detective and Petitioner acknowledged each right. Most importantly, Petitioner does not dispute that he understood the rights he was waiving. There was no evidence that Detective Enrique deliberately postponed reading the petitioner his rights in order to obtain incriminating statements. The record also reflects that Detective Enrique's approach was not based on a standard BSO protocol to conduct interviews in this manner.

In order to meet the first prong of Strickland, it is not sufficient for the Petitioner to show that appellate counsel omitted a nonfrivolous argument, because it is well established that counsel does not have a duty to raise every nonfrivolous issue. Rather, it is essential for appellate counsel to "examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). Clearly, appellate counsel cannot be deemed ineffective for not raising this claim on direct appeal, since it was meritless under Tengbergen and there was no reasonable probability of success on appeal. Therefore, for the reasons set forth herein, Petitioner is not entitled to relief on this claim.

E. Claims of ineffective assistance of trial counsel

In **claim eight**, petitioner argues that his trial counsel rendered ineffective assistance by failing to object to the misapplication of law during the hearing on the motion to suppress cell tower records. However, Petitioner does not specify how the law was misapplied in his case.

A review of his postconviction motion filed in the state court, reveals that Petitioner argued that his counsel should have known and argued before the trial court that section 92.605, Florida Statutes governs the release and production of business records by Florida businesses and out-of-state corporations. (DE#12:Ex.16:6). Furthermore, he alleged that had trial counsel properly researched the issue, he would have been able to argue successfully, based on United States v. Davis, 754 F.3d 1205 (11th Cir. 2014), that Petitioner had an expectation of privacy in his cell site location information, his Fourth Amendment right was violated when the police obtained the records without a

warrant, and the information should have been suppressed. (DE#12:Ex.16:6).

As previously discussed,[13] the underlying claim is meritless and therefore trial counsel cannot be deemed ineffective for not pursuing the arguments Petitioner wanted him to pursue. Furthermore, the decision in United States v. Davis, 754 F.3d 1205 (11th Cir. 2014), on which Petitioner relies in support of his claim of ineffective assistance was not available to counsel at the time of the hearing on the motion to suppress. Most importantly, that decision was vacated by the Eleventh Circuit on rehearing en banc. United States v. Davis, 785 F.3d 498 (11th Cir. 2015), cert. denied, __ U.S. __ , 136 S.Ct. 479, 193 L.Ed.2d 349 (2015). On rehearing en banc, the court held that a defendant has "no subjective or objective reasonable expectation of privacy" in cell phone tower records obtained from a provider and therefore, the Government's obtaining such records did not constitute a search under the Fourth Amendment. Davis, 785 F.3d at 511-13.

The state courts' adjudication of Petitioner's instant claim of ineffective assistance of counsel was not in conflict with clearly established federal law or based on an unreasonable determination of the facts and it should not be disturbed. Taylor, 529 U.S. 362, 120 S.Ct. 1495.

In **claim nine**, Petitioner argues that his trial counsel rendered ineffective assistance for failing to argue or object to conviction or sentence of uncharged offense of principal. (DE#1:9B). He contends that his trial counsel failed to object to the prosecutor's request that the principal instruction be given to the jury. (DE#1:9B). He claims that counsel's performance

---

[13] See supra at 37-40.

prejudiced him because it changed the outcome of the proceedings.

The record reflects that the Petitioner was charged as a principal in the Information. (DE#12:Ex.1:7-10). The jury could lawfully find Petitioner guilty of the crimes as a principal pursuant to section 777.011, Florida Statutes. Under Florida law, felons "are generally responsible for the acts of their co-felons." Lovette v. State, 636 So.2d 1304, 1306 (Fla. 1994) (citing Adams v. State, 341 So.2d 765 (Fla. 1976)). "As perpetrators of an underlying felony, co-felons are principals in any [crime] committed to further or prosecute the initial common criminal design." Lovette v. State, 636 So.2d at 1306 (citing Adams; Hampton v. State, 336 So.2d 378 (Fla. 1st DCA 1976)) (alteration in the original). Florida law is clear that a person may be convicted of a criminal offense if he aided and abetted the principals. See Fla. Stat. §777.011 (aider or abettor may be convicted as principal even if not actually or constructively present at commission of offense); Voto v. State, 509 So.2d 1291, 1292-93 (Fla. 4th DCA 1987); Ramirez v. State, 371 So.2d 1063, 1065 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1201 (Fla. 1980).

A person who participates in a crime is responsible for the acts of his accomplice, provided that the crime committed by the accomplice is within the common design, the participant intended the crime to be committed, and the participant performed some act to assist the accomplice in actually committing the crime. Larzelere, 979 So.2d at 215 (citations omitted); Parker v. State, 458 So.2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088 (1985); Jacobs v. State, 396 So.2d 713, 717 (Fla. 1981) ("One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.").

Florida law also provides that the intent element can be satisfied by a showing either that the aider and abettor personally had the requisite intent, or that he knew the principal possessed it. Stark v. State, 316 So. 2d 586, 587 (Fla. 4th DCA 1975).

Therefore, Petitioner need not have been the perpetrator of the robberies. The evidence admitted at trial, including Petitioner's statement to the police and Petitioner's MetroPcs cell phone records established that Petitioner participated in the robberies as a lookout and that he was in the area where the robberies were committed while they were being committed, and that he was in contact via cell phone with his codefendant at the time of their commission. Therefore, the State presented sufficient evidence at trial to warrant a principal theory jury instruction. The instruction[14] given in this case was appropriate and accurately and adequately stated the relevant law. Therefore, counsel's failure to make a frivolous objection is not deficient performance falling below and objective level of reasonableness. See Knowles, 556 U.S. at 126-27, 129 S.Ct. at 1422 (the law does not require counsel to raise every available non-frivolous defense); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection); United States v. Winfield, 960 F.2d 970,

---

[14] The trial court instructed Petitioner's jury as follows:

> If the defendant helped another person or persons commit or attempt to commit a crime the defendant is a principal and must be treated as if he had done all the things the other person or persons did if:
> One, the defendant had a conscious intent that the criminal act be done.
> Two, the defendant did some act or said some word which was intended to and which did insight [sic], cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime. To be a principal the defendant does not have to be present when the crime is committed.

(DE#12:Ex.9:1242).

974 (11th Cir. 1992) (noting that "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

For the reasons stated herein, Petitioner's instant ineffective assistance of trial counsel claim fails under both prongs of the Strickland standard, as properly determined by the state courts.

## VI. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove factual allegations in the petition, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (citation omitted). A district court is not required to hold a hearing when the record refutes the factual allegations in the petition or precludes habeas relief. Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court was able to adequately assess the claims raised by Petitioner without the need to further develop the facts, an evidentiary hearing was not warranted. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. den'd, 541 U.S. 1034 (2004).

## VII. Certificate of Appealability

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254, provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." If a certificate is granted, the court must specify the specific issue(s) "that satisfy the showing required by 28 U.S.C. §2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United

States District Courts. A section 2254 petitioner "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." Fed.R.App.P. 22(b)(1). Even when a court issues a certificate of appealability, a timely notice of appeal must still be filed. See 28 U.S.C. §2254 Rule 11(b).

A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make the requisite showing, a section 2254 petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 336, 123 S.Ct. at 1039 (internal quotation marks and citations omitted); see also Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001).

This Court finds the Petitioner has not demonstrated that he was denied a constitutional right or that the issue is reasonably debatable. See Slack, 529 U.S. at 485; Edwards v. United States, 114 F.3d 1083, 1084 (11th Cir. 1997). Thus, issuance of a certificate of appealability is not warranted and should be denied. Notwithstanding, if petitioner disagrees with this Court's finding, he may bring this argument to the attention of the District Judge in objections.

III. <u>Conclusion</u>

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied; that a certificate of appealability be denied; and the case closed.

Objections to this report may be filed with the District Judge within fourteen (14) days of receipt of a copy of the report.

SIGNED this 25th day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Timothy Johnson, pro se
     DC#: 191403
     Jackson Correctional Institution
     5563 10th Street
     Malone, FL 32445-3144

     Nancy Jack, Assistant Attorney General
     Florida Attorney General's Office
     1515 N. Flagler Drive, Suite 900
     West Palm Beach, FL 33401